# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:16-CV-00830-TBR

GGNSC LOUISVILLE ST. MATTHEWS,
d/b/a Golden Living Center—St. Matthews, *et al.*,     Plaintiffs,

v.

ANTHONY MADISON, as Guardian of
William Madison, Incapacitated,     Defendant.

## MEMORANDUM OPINION AND ORDER

In 2012, William Madison, Jr. was admitted to the Golden Living Center, a nursing home operated by GGNSC Louisville St. Matthews, LLC. Prior to admission, Anthony Madison, Sr. signed an arbitration agreement as William Madison, Jr.'s attorney-in-fact. During William Madison, Jr.'s stay at the Golden Living Center, he allegedly suffered physical and emotional injuries due to inadequate care. The instant action raises questions about how the claims related to those alleged injuries must be adjudicated. Anthony Madison, Sr. (as William Madison, Jr.'s guardian) maintains that any litigation ought to proceed in state court. In contrast, GGNSC argues that the dispute should go to an arbiter. The Court agrees with GGNSC. Accordingly, Anthony Madison, Sr.'s Motion to Dismiss, [R. 7], is **DENIED**, and GGNSC's Motion to Compel Arbitration and Enjoin Proceedings, [R. 4], is **GRANTED**.

### I.

### A.

In August 2012, William Madison, Jr. was admitted to the Golden Living Center, a nursing home operated by GGNSC Louisville St. Matthews, LLC, in Louisville, Kentucky. [R. 1 at 5, ¶ 17 (Complaint).] During the relevant time period, Anthony

Madison, Sr. exercised control over William Madison, Jr.'s affairs as his attorney-in-fact.

[*Id.*, ¶ 18.] The power of attorney granted Anthony Madison, Sr.

> maximum power under law to perform any act on [William Madison, Jr.'s] behalf that [he] could do personally including but not limited to, all acts relating to any and all of [William Madison, Jr.'s] financial transactions and/or business affairs including all banking and financial institution transactions, all real estate or personal property transactions, all insurance or annuity transactions, all claims and litigation, and any and all business transactions.

[R. 1-3 at 2 (Power-of-Attorney Document).] As part of the admissions process, Anthony Madison, Sr. signed an arbitration agreement on William Madison, Jr.'s behalf. [R. 1 at 5, ¶ 19.] The arbitration agreement required the parties to arbitrate "any and all disputes arising out of or in any way relating to [the arbitration agreement] or [William Madison, Jr.'s] stay" at the Golden Living Center. [R. 1-2 at 3, § III (Arbitration Agreement).]

During William Madison, Jr.'s stay at the Golden Living Center, he allegedly suffered physical and emotional injuries due to inadequate care, resulting in an expedited, unnatural deterioration in his health. [R. 1-1 at 13, ¶¶ 29–30 (State Court Complaint).] In response, Anthony Madison, Sr. (as his guardian) sued GGNSC and its affiliated entities, along with various administrators at the Golden Living Center, in Jefferson County Circuit Court for negligence, medical negligence, corporate negligence, and for violating a long-term care resident's statutory rights.[1]  [*Id.* at 14–29, ¶¶ 32–74.] The record does reveal much about the status of the state-court litigation.

---

[1] The corporate entities named in the state-court action (as well as this action) include GGNSC Louisville St. Matthews LLC, d/b/a Golden Living Center—St. Matthews; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC, d/b/a Golden Innovations; GGNSC Clinical Services, LLC, d/b/a Golden Clinical Services; and GPH Louisville St. Matthews, LLC. [R. 1-1 at 5–9, ¶¶ 4–12 (State Court Complaint).] For simplicity's sake, the Court will refer to those entities collectively as "GGNSC."

**B.**

Before answering the allegations made in the state-court litigation, GGNSC filed this action against Anthony Madison, Sr. [R. 1 at 8–10, ¶¶ 33–44.] Soon after, it filed a motion to compel arbitration and enjoin the state-court litigation discussed earlier. [R. 4 (Motion to Compel Arbitration and Enjoin Litigation).] In lieu of an answer, Anthony Madison, Sr. moved to dismiss GGNSC's action on several grounds. [R. 7 (Motion to Dismiss).] Those competing motions are ripe for decision.

**II.**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, "embodies [a] national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Under the Act, a written agreement to arbitrate disputes arising out of a contract or transaction involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There are "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Before compelling a party to arbitration under 9 U.S.C. § 4, the Court "must engage in a limited review to determine whether the dispute is arbitrable," meaning "[1] that a valid agreement to arbitrate exists

---

The administrators named in the state-court action include Joshua Schindler, Brian Mueller, Allyson Skaggs, Lisa Davis, and Kristi Noah. [*Id.* at 9–11, ¶¶ 13–17.] The Court will refer to them as the "administrators." None of the administrators are parties to the instant action.

between the parties and [2] that the specific dispute falls within the substantive scope of the agreement." *Richmond Health Facilities*, 811 F.3d at 195 (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)); *see also Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). If the Court is satisfied that the parties formed a valid agreement to arbitrate, it must compel the parties resolve the covered dispute in the contracted-for manner. *See* 9 U.S.C. § 4.

## III.

The Court first addresses Anthony Madison, Sr.'s motion to dismiss before turning to GGNSC's motion to compel arbitration. Anthony Madison, Sr. makes seven arguments in an effort to escape arbitration. None of them are novel. In some form or fashion, each one has been raised before and rejected time and again. Still, the Court will address each in turn. Ultimately, it finds no reason to depart from this Circuit's well-settled positions.

### A.

Anthony Madison, Sr. begins with an attack directed at the Court's subject-matter jurisdiction. [R. 7-2 at 3–11 (Memorandum in Support).] Of the two kinds of original jurisdiction, *see* 28 U.S.C. §§ 1331–1332, this case concerns the one labeled "diversity." The Court exercises such jurisdiction in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" parties who are "citizens of different States." 28 U.S.C. § 1332(a)(1). If a party thinks that such jurisdiction might be wanting, the Federal Rules of Civil Procedure afford that person an avenue for relief.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), the doubting party may move to dismiss an action for lack of subject-matter jurisdiction. Challenges of that sort come in one of two forms: a facial attack or a factual attack. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017). A facial attack questions "merely the sufficiently of the pleading." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). In a challenge of that sort, the Court takes the allegations in the complaint as true. *Id.* (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325). When assessing a factual attack, in contrast, the Court "does not presume that the plaintiff's factual allegations are true." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015)). Instead, the Court must "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1133 (6th Cir. 1996)).

No one disputes that complete diversity of the parties is apparent from the face of GGNSC's complaint. GGNSC and its affiliated entities are variously citizens of California, Delaware, Virginia, North Carolina, Ohio, Iowa, and Nebraska. [R. 1 at 2–4, ¶¶ 2–9.] Anthony Madison, Sr. is a citizen of the Commonwealth of Kentucky. [*Id.* at 4, ¶ 10.] Therefore, it appears that GGNSC has sufficiently pleaded diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1).

But Anthony Madison, Sr. disagrees. Relying on *Vaden v. Discover Bank*, 556 U.S. 49 (2009), he urges the Court to "look through" GGNSC's petition to his state-court

action for purposes of determining the diversity of the parties. If the Court were to do that, the inclusion the administrators (who are citizens of Kentucky) in the jurisdictional calculus would destroy complete diversity.

The Court declines to do so. Anthony Madison, Sr.'s argument rests on a strained interpretation of *Vaden*. *Vaden* dealt with a petition to compel arbitration premised on federal-question jurisdiction. *Id.* at 59–60. In that context, the Supreme Court instructed federal courts to "look through" the petition to the predicate state-court action and determine if that action, standing alone, met the requirements of 28 U.S.C. § 1331. *Id.* at 62. However, *Vaden*'s holding is limited to those cases involving federal-question jurisdiction. *See Northport Health Servs. of Ark., LLC v. Rutherford*, 605 F.3d 483, 488 (8th Cir. 2010). It has no application to cases, such as this one, involving diversity jurisdiction. *See, e.g.*, *GGNSC Stanford, LLC v. Gilliam*, 205 F. Supp. 3d 884, 888 (E.D. Ky. 2016); *Preferred Care, Inc. v. Howell*, 187 F. Supp.3d 796, 804–05 (E.D. Ky. 2016); *Brookdale Sr. Living Inc. v. Stacy*, 27 F. Supp. 3d 776, 781–82 (E.D. Ky. 2015). Therefore, the Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a).

**B.**

In the alternative, Anthony Madison, Sr. maintains that GGNSC's action must be dismissed for failure to join the administrators, whom he labels as indispensable parties. [R. 7-2 at 11–16.] Federal Rule of Civil Procedure 12(b)(7) creates an avenue to dismiss an action for failure to join an indispensable party. Fed. R. Civ. P. 12(b)(7). To determine whether a person qualifies as an indispensable party, the Court conducts a three-step analysis. *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 200 (6th Cir. 2001) (citing

*Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993)); *see also Laethem Equip. Co. v. Deere & Co.*, 485 F. App'x 39, 43 (6th Cir. 2012). Under the first step, which is a threshold requirement, the Court must determine "whether the person or entity is a necessary party under Rule 19(a)." *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 666 (6th Cir. 2004) (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990)). A person becomes a "necessary party" to litigation if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1); *see also Wilson v. Gordon*, 822 F.3d 934, 956 (6th Cir. 2016). If the person is a necessary party, then the Court considers whether joinder of that person is feasible. *PaineWebber, Inc.*, 276 F.3d at 200. So long as the person is subject to personal jurisdiction in the forum state and the addition of that person would not destroy subject-matter jurisdiction, then joinder is feasible. Fed. R. Civ. P. 19(a). However, if joinder of a necessary party is not feasible, the Court must take the third and final step of deciding whether the person qualifies as an indispensable party. *PaineWebber, Inc.*, 276 F.3d at 200. To make that determination, the Court looks to the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:

> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

An action need only be dismissed if, after weighing those factors, the Court finds that the nonjoined person is truly indispensable. For the sake of argument, the Court will assume that the administrators qualify as "necessary" parties whose joinder would not be feasible under Rule 19(a). That notwithstanding, nothing makes the administrators indispensable under Rule 19(b).

Having considered the factors laid out in Rule 19(b), there is no roadblock to proceeding without them. First, the risk of prejudice to anyone concerned is minimal at best. It is true, for example, that Anthony Madison, Sr. risks having to proceed in two different forums. Yet, he occasioned that risk when he decided to litigate in state court instead of demanding arbitration in the first place. Second, in light of the minimal prejudice, there is no need to resort to mitigating measures. Third, there is nothing to indicate that a judgment returned in the administrators' absence will be inadequate. Fourth, because GGNSC could attempt to compel arbitration in state court, it has an adequate remedy if this action were dismissed. Nonetheless, the balance of the remaining factors militates against finding the administrators indispensable to this action. *See, e.g.*, *Diversicare of Nicholasville, LLC v. Lowry*, 213 F Supp. 3d 859, 862–65 (E.D. Ky.

2016). Accordingly, the Court finds that, in equity and good conscience, this action ought to continue.

### C.

Next, Anthony Madison, Sr. encourages the Court to abstain from exercising jurisdiction. [R. 7-2 at 16–20.] The obligation of federal courts to exercise the jurisdiction granted to them is close to unflagging. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). Of course, no rule is without exception. In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court recognized that federal courts should sometimes abstain from exercising jurisdiction over an action involving "substantially the same issues and substantially the same parties as a parallel case in state court." *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 612 (E.D. Ky. 2010) (citing *Colorado River*, 424 U.S. at 817–21).

The threshold question in *Colorado River* abstention is whether there are parallel proceedings in state court. *Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004) (citing *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984)). "The state court proceedings need not be identical, merely 'substantially similar.'" *Id.* (quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998)). The Court will assume, *arguendo*, that this action and the state-court litigation are sufficiently parallel.

In this Circuit, courts then weigh a number of factors to determine if abstention is appropriate. *Great Earth Cos. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002). The list of factors includes:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is

state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Id.* (alterations in original) (quoting *PaineWebber, Inc.*, 276 F.3d 206). Of those eight, the most important factor is "whether there exists a 'clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication.'" *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (alterations in original) (quoting *Colorado River*, 424 U.S. at 819).

In this case, the balance of those factors weighs against abstention. First, property is not at issue in this action. Second, litigation in this forum is just as convenient as litigation in state court. Third, the FAA prioritizes the enforcement of arbitration agreements—even when, as in most cases, it might result in piecemeal litigation. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Fourth, the state court obtained jurisdiction first, but GGNSC filed this action less than two weeks later. Fifth, while state law will govern the contractual defenses that Anthony Madison, Sr. raises against the arbitration agreement, the FAA governs the enforceability of that agreement. Sixth, the state-court action seems adequate to protect GGNSC's federal rights. Seventh, there is no discernable difference between the progress of the state-court litigation and this action. Lastly, concurrent jurisdiction is present. In sum, nearly all of the relevant factors counsel against abstention. *See, e.g.*, *GGNSC Frankfort, LLC v. Tracy*, No. CIV. 14-30-GFVT, 2015 WL 1481149, at *7–9 (E.D. Ky. Mar. 31, 2015). Therefore, the Court declines to abstain.

### D.

Turning to the substantive aspects of this dispute, the Court tackles Anthony Madison, Sr.'s remaining merits-based defenses, along with GGNSC's motion to compel

arbitration and to stay the state-court litigation. To begin, Anthony Madison, Sr. claims that GGNSC's complaint fails to plead a connection between the arbitration agreement at issue and interstate commerce. [R. 7-2 at 21–23.]

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Id.* at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

The FAA mandates that an arbitration clause, such as the provision involved in this action, in a "contract evidencing a transaction involving interstate commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The phrase "involving interstate commerce" as used in the Act carries the same meaning as the similar phrase found in the Commerce Clause of the Constitution. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56

(2003) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995)). In other words, there will be a sufficient nexus even without "showing any specific effect upon interstate commerce" resulting from the individual case if, in the aggregate, "the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* at 56–57 (alteration in original) (quoting *Mandeville Island Farms v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236 (1948)).

In the complaint, GGNSC alleged that the "transactions and contracts . . . that are the subject of this action involve commerce among the several states." [R. 1 at 4, ¶ 13.] There is nothing implausible about that allegation. It blinks reality to say that, in the aggregate, the nursing home industry does not affect interstate commerce. *Cf. Glen Manor Home for Jewish Aged v. NLRB*, 474 F.2d 1145, 1149 (6th Cir. 1973). GGNSC alone does business in at least eight states. Its activities are not confined to the Commonwealth's borders. *See, e.g.*, *GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200, at *3 (W.D. Ky. Feb. 9, 2017). The complaint plausibly alleges that William Madison, Jr.'s admissions papers (and the arbitration provision within them) reflect a transaction involving interstate commerce.

### E.

Even so, Anthony Madison, Sr. takes issue with whether the power of attorney provided sufficient authority to enter into an arbitration agreement on William Madison, Jr.'s behalf. [R. 7-2 at 23–26.] Because arbitration agreements are, in essence, contracts, Kentucky law guides the Court's inquiry into the question of contract formation. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). Contrary to Anthony

Madison, Sr.'s argument, however, the Court finds that William Madison, Jr.'s power of attorney authorized his attorney-in-fact to execute the arbitration agreement at issue.

1.

As discussed earlier, William Madison, Jr.'s power of attorney granted Anthony Madison, Sr.

> maximum power under law to perform any act on [William Madison, Jr.'s] behalf that [he] could do personally including but not limited to, all acts relating to any and all of [William Madison, Jr.'s] financial transactions and/or business affairs including all banking and financial institution transactions, all real estate or personal property transactions, all insurance or annuity transactions, *all claims and litigation*, and *any and all business transactions*.

[R. 1-3 at 2 (emphasis added).] Significantly, the language used is broad: It empowers William Madison, Jr.'s attorney-in-fact to act on his behalf with respect to many different types of transactions. In that way, the power of attorney is distinct from those in cases such as *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), and *Pine Tree Villa, LLC v. Brooker*, 612 F. App'x 340, 341 (6th Cir. 2015), where the powers-of-attorney just discussed the agent's authority to make health care decisions. Here, William Madison, Jr.'s power of attorney contemplated something more than that. The Court concludes that it permitted Anthony Madison, Sr. to execute the arbitration agreement in question. *See, e.g.*, *Diversicare of Nicholasville, LLC*, 213 F. Supp. 3d at 869 (holding grant of power to "enter into binding contracts" sufficient to execute arbitration agreement); *GGNSC Stanford, LLC*, 205 F. Supp. 3d at 892–93 (holding grant of power to "make and sign any and all checks, contracts and agreements" and to "institute or defend suits concerning [decedent's] property or rights" sufficient to execute arbitration agreement); *Brookdale Sr. Living Inc.*, 27 F. Supp. 3d at 790–91 (holding grant of power to "make, execute, and deliver for [decedent] and in [her] name any and

all deeds, documents, writings, checks, drafts and notes, of all kinds and descriptions" to be sufficient to execute arbitration agreement).

2.

In the alternative, Anthony Madison, Sr. stresses that, under Kentucky law, a power-of-attorney document must expressly and unambiguously grant the attorney-in-fact authority to execute an arbitration agreement. [R. 7-2 at 26.] Absent an express grant, he says, the attorney-in-fact is without authority sign such an agreement. In support of that position, Anthony Madison, Sr. points to *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), in which the Kentucky Supreme Court held just that. Nonetheless, the point is moot in light of *Kindred Nursing Centers Ltd. P'ship v. Clark*, ––– U.S. –––, 2017 WL 2039160 (2017), which reversed the Kentucky Supreme Court on this precise issue. Anthony Madison, Sr. argument is accordingly without merit.

F.

Next, Anthony Madison, Sr. attacks the arbitration agreement as an unconscionable contract. [R. 7-2 at 26–28.] Generally speaking, the doctrine of unconscionability is "one of the grounds upon which any contract may be revoked." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citing *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 341–42 (2011); *Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 575 (Ky. 2012); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001)). "An unconscionable contract is 'one which no man in his sense, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" *Schnuerle*, 376 S.W.3d at 575

(quoting *Louisville Bear Safety Serv., Inc. v. S. Cent. Bell Tel. Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App. 1978)). Kentucky law recognizes two theories of unconscionability: procedural and substantive. *Energy Home*, 406 S.W.3d at 835; *accord In re Merv Props., L.L.C.*, 539 B.R. 516, 531 (B.A.P. 6th Cir. 2015). Here, Anthony Madison, Sr. relies on both theories, but each comes up short.

1.

First, nothing of the arbitration agreement smacks of procedural unconscionability. "Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement." *Energy Home*, 406 S.W.3d at 835 (citing *Schnuerle*, 376 S.W.3d at 576–77). It includes, for example, "the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term." *Id.* (citing *Schnuerle*, 376 S.W.3d at 576–77). When evaluating whether a contract is procedurally unconscionable, the Court ought to consider factors such as "the bargaining power of the parties, 'the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice.'" *Schnuerle*, 376 S.W.3d at 576 (quoting *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 875–76 (11th Cir. 2005)).

Anthony Madison, Sr.'s procedural unconscionability challenge rests, in part, on the disparity of bargaining power between family members confronted with the emotional and difficult task of admitting loved-ones to nursing homes and the corporate entities which run them. [R. 7-2 at 27.] A mere difference in bargaining power, however, does not make an agreement unconscionable. Anthony Madison, Sr. also complains about the volume of paperwork required to complete the nursing home

admissions process. [*Id.*] Of course, many situations in life—such as buying a home or beginning a new job—involve "a lengthy process in which an individual must complete a substantial amount of paperwork." *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-CV-902-DJH, 2016 WL 815295, at *6 (W.D. Ky. Feb. 29, 2016). But there is no basis to avoid those types of transactions as unconscionable—and so too here. In short, nothing about the agreement itself is unfairly presented: It is plainly stated; its implications are in bold type; it does not limit recovery; it is reciprocal; and Anthony Madison, Sr. could have opted out of the agreement within thirty days of signing it. [R. 1-2 at 2–5.] Taking those things into account, the arbitration agreement is not unconscionable from a procedural standpoint.

**2.**

Second, the arbitration agreement is not substantively unconscionable either. "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Energy Home*, 406 S.W.3d at 835 (citing *Schnuerle*, 376 S.W.3d at 577). Factors relevant to the substantive unconscionability inquiry include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Id.* (quoting *Schnuerle*, 376 S.W.3d at 577).

On that front, Anthony Madison, Sr.'s arguments are nothing more than objections to the way that arbitration works. [R. 7-2 at 27–28.] Whatever weight those objections might carry elsewhere, none represent a proper basis for refusing to enforce an arbitration clause under the doctrine of unconscionability. *See, e.g., GGNSC Louisville*

16

*Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *9 (W.D. Ky. Dec. 19, 2013).

### G.

Lastly, Anthony Madison, Sr. urges the Court to refrain from enjoining the parties from litigating in state court. [R. 7-2 at 28–31.] Although the FAA requires this Court to stay proceedings before it where the issues to be litigated are subject to an arbitration agreement, *see* 9 U.S.C. § 3, it does not explicitly authorize the same relief with respect to parallel litigation in state court, *Great Earth Cos.*, 288 F.3d at 893. Instead, the Court's authority to "enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally," including the Anti-Injunction Act. *Id.* at 894 (citing 28 U.S.C. § 2283). The Anti-Injunction Act, in turn, prohibits the Court from issuing an "injunction to stay proceedings" in state court "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see also 202 N. Monroe, LLC v. Sower*, 850 F.3d 265, 271 (6th Cir. 2017). It is well-established that an injunction issued concurrent with an order to compel arbitration falls into the exception "to protect or effectuate [the Court's] judgments." *Great Earth Cos.*, 288 F.3d at 894. Therefore, enjoining Anthony Madison, Sr. from proceeding against GGNSC in the state-court litigation does no violence to the Anti-Injunction Act. *See, e.g.*, *Brandenburg Health Facilities, LP v. Mattingly*, No. 3:15-CV-833-DJH, 2016 WL 3448733, at *5 (W.D. Ky. June 20, 2016). The Court will enjoin him accordingly.

# IV.

**IT IS HEREBY ORDERED** that Anthony Madison, Sr.'s Motion to Dismiss, [R. 7], is **DENIED**.

**IT IS FURTHER ORDERED** that GGNSC Louisville St. Matthews LLC, d/b/a Golden Living Center—St. Matthews; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC, d/b/a Golden Innovations; GGNSC Clinical Services, LLC, d/b/a Golden Clinical Services; and GPH Louisville St. Matthews, LLC's Motion to Compel Arbitration and Enjoin Proceedings, [R. 4], is **GRANTED**. Anthony Madison, Sr. is **ENJOINED** from proceeding against the aforementioned parties in the action styled *Madison ex rel. Madison v. GGNSC Louisville St. Matthews, LLC*, Civil Action No. 16-CI-006218, in Jefferson County Circuit Court, Kentucky. Anthony Madison, Sr. is **COMPELLED** to submit his claims against the aforementioned parties to arbitration in accordance with the terms of the Alternative Dispute Resolution Agreement, [R. 1-2]. The instant action is **STAYED** pending conclusion of arbitration. The parties **SHALL** promptly inform the Court when arbitration is complete.

**IT IS SO ORDERED.**

Date:

cc: Counsel of Record
David L. Nicholson, Jefferson Circuit Clerk